WELSH *et al.* v. THE JACKSON COUNTY HORSE RAILROAD COMPANY, *Appellant.*

**Negligence**: DEATH OF CHILD: DISCOVERY OF ITS DANGER. In an action for the negligent death of plaintiffs' child, caused by one of defendant's horse railway cars running over it, an instruction is properly refused which exempts the defendant from liability, unless the driver could have stopped the car in time to have prevented the accident after the dangerous situation of the child was discovered. Such instruction is defective in ignoring the question whether or not the driver, in the exercise of ordinary care, could have discovered the child in time to have prevented the accident, for if he could so have discovered the child, the defendant would still be liable.

*Appeal from Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

AFFIRMED.

*Wells H. Blodgett* for appellant.

The defendant was entitled to have given the eighth instruction asked by it. *Maschek v. Railroad Co.,* 71 Mo. 276; *Devitt v. Railroad Co.,* 50 Mo. 305; *Morris v. Platt,* 32 Conn. 82.

*Tichenor & Warner* for respondent.

Only ordinary care was demanded of the driver of the car. Can it be true that the lowest degree of care is not required of a street car company which takes up one-fourth

of a much traveled street in a large city, with three cars passing at one point, and that to in reference to a helpless child? *Frick v. Railroad Co.*, 75 Mo. 609. The counsel for the defense below could not deny this, and the fifth instruction given for the defendant is fully as strong as the one given on this point at the instance of plaintiff. The young and the old, the lame and infirm are entitled to the use of the street, and more care must be exercised toward them by persons controlling or managing cars and vehicles than toward those who have better powers of motion. *O'Flaherty v. W. R. Co.*, 45 Mo. 73; *Koons v. Railroad Co.*, 65 Mo. 592; *Monerman v. Stewarts*, 71 Mo. 101; *Bell v. Railroad Co.*, 72 Mo. 61; *Frick v. Railroad Co.*, 75 Mo. 610. Cooley on Torts, page 683, says: " Thus a person driving rapidly along a highway where he sees boys engaged in sports, is not at liberty to assume that they will exercise the same discretion in keeping out of his way that would be exercised by others, and ordinary care demands of him that he shall take notice of their immaturity and govern his actions accordingly." See authorities note 4, also note 3, p. 681; *Railroad Co. v. Gladman*, 15 Wall. 401. The defense presents this doctrine very forcibly in their instruction No. two. Defendant's No. three should not have been given, because there was no evidence upon which to base it. *Koons v. Railroad Co., supra.* Five instructions were given at defendant's instance, on the subject of contributory negligence, and the one refused was on the same subject, and covered by those given. When the evidence as to negligence is conflicting, the case should be submitted to the jury. *Railroad Co. v. Stout*, 17 Wall. 664.

RAY, J.—The plaintiffs, who are husband and wife, began this action in the special law and equity court of Jackson county, to recover of defendant the sum of $5,000 for the death of their infant son.

On the 4th day of September, 1878, after the father, who was a laboring man, had gone to his work, the child

named Robert, who was under six years of age, left the premises where the plaintiffs were living, without their consent, and, in a short time afterward, was run over and killed by a street car of the defendant in the day-time upon Union Avenue, in Kansas City, and at a point about opposite the Union depot.   The defendant had its street car tracks laid on Union Avenue where the child was run over.   The car in charge of a driver named Patrick Scanlon, was coming up from the bottoms toward the city on the track next to the depot.   At the same time two other cars, belonging to defendant, were going in the opposite direction upon the other track.   A driver named Burnes was in charge on the one in front, and the witness Mahoney was in charge of the other.   The material averments in the petition are to the effect that Robert Welsh, an infant, under six years of age, whilst lawfully upon Union Avenue, a public thoroughfare in Kansas City, was run over and killed by one of defendant's street cars by reason of the carelessness, negligence and disregard of duty on the part of the driver in driving the car at an unusual rate of speed, and in failing to keep a proper lookout for persons on defendant's track when, by so doing, he could have discovered said infant in time to have prevented the car from running over him.

The answer admitted the incorporation of defendant, but denied every other allegation of the petition, and further charged that the child came to its death by reason of its own carelessness and the negligence of the plaintiffs. Upon these issues the plaintiffs obtained a verdict and judgment for $5,000.

It is not necessary, we think, to set out at length, or in detail, the evidence in the case.   As it stands before us for our determination, it may be assumed that there was sufficient evidence as to the conduct of the child, the rate of speed at which the car was being driven at the time, and as to and concerning the conduct of the driver, to justify and require the trial court to submit the case to the jury. Indeed this was virtually conceded, we think, upon the

oral arguments before us, and is so conceded in the brief of appellant on file. At the conclusion of the testimony the court, at the request of plaintiffs, gave to the jury four instructions.

The first declared, that if by the exercise of ordinary care and prudence the driver might have seen the child and stopped the car in time to have avoided the killing; or if by the exercise of ordinary care and prudence, under the circumstances, the driver might have avoided driving over the child, plaintiffs must recover. The second told the jury that children were entitled to the use of the streets, and that more care should be exercised toward them by persons managing cars and vehicles, than toward persons of mature years, and that plaintiffs' son was only required to exercise care and prudence equal to his capacity. The third pertained to the conduct of the parents, and told the jury that they might consider the inability of plaintiffs to employ a nurse; and also whether they suffered the child to go from their home, or whether the child wandered away unknown to them. The fourth pertained only to the measure of damages.

At the request of defendant the court also gave to the jury a number of instructions.

The one numbered two, (but being the first given for defendant,) defined the duty of parents toward their children, and declared that in this case the plaintiffs should have exercised a degree of care in proportion to the helplessness and indiscretion of the child. The one numbered three also pertained to the duty of parents, and told the jury that plaintiffs could not recover if they negligently permitted their child to wander into the street, where it was killed, without negligence on the part of defendant. The fourth told the jury that it was the duty of the child to exercise care in proportion to its capacity, and that if the want of such care on the part of the child was the proximate cause of its death, the plaintiffs could not recover.

The fifth and six, also given, are as follows:

5.   Although the child was run over and killed by one of defendant's cars, yet if the driver of the car at the time was using such care and caution as a prudent person would have used under like circumstances, or if the accident could not have been avoided under all the circumstances of this case by the use of such care and caution, then your finding should be for the defendant.

6.   If you believe from the evidence that the child either got on the rear end of one of the defendant's cars while in motion, or was holding on to the same, and just as a car of defendant's was passing in an opposite direction the child jumped off or stepped off on the inside of the line of the two cars, at or near to the feet of the mules drawing the car thus going in an opposite direction, and thereby frighted said mules, was run over and killed, and such child was not seen by the driver of such mules in time to stop his car and to avoid the accident, then you should find for the defendant.

The seventh, also given, was the same, in substance, as the fifth.

In regard to the foregoing instructions, the only criticism made upon them by counsel for defendant is, that while they may be abstractly correct, they are, with the exception of the sixth, too general, and are not applications of the law of the case to the particular and specific facts in evidence.

The defendant, also asked the following instruction, numbered eight, which the court refused to give:

8.   If you find that two of the cars were going in opposite directions, one toward the bottoms and the other up town, and although the child may not have been on or holding to either of them, still if it attempted *to cross the street*, and in doing so was going or passing behind the car going towards the bottoms, so that the driver of the car going in an opposite direction *did not see it* until it got under the feet of his mules, that the mules were thus

frightened and the child run over and killed, and the driver could not have avoided the accident after he saw the child, then your finding must be for the defendant.

This action of the court is, we think, the only question now before us for our examination. On the trial of the cause the witness, Thos. Mahoney, who was the driver of the rear car of the two going south, testified, in effect, upon this point, that the boys were riding or holding for a distance of seventy-five or 100 feet on the rear of the front car going south, and that the boy who was run over jumped from behind the car under the feet of the mules going north; that the mules were frightened and jumped to the right, toward the depot, and that the boy was run over before the driver could stop. To meet the evidence of this witness and evidence of this description, the instruction No. 6, set out above, was asked by the defendant and given by the court. But there were, as contended by defendant, other witnesses in the case who did not testify as Mahoney did, that the boy got or rode on the rear of the front car for any distance, but testified on the contrary, in effect, we think, that the boy ran straight across the street and passed close behind the car going south and in our judgment, as counsel say, the preponderance of the testimony seems to be against the evidence of Mahoney on this point. Under the sixth instruction, thus given as applicable to the facts testified to by Mahoney, the jury, it will be seen, were required to believe, among other things, that the child either got on or was holding on to the rear end of the car going south, before their verdict could be for the defendant. Defendant's counsel contends that defendant was entitled to have said instruction, No. eight, also given to the jury, so that they should be fully instructed as to how they should find under each of the above alternatives presented by the evidence. In the absence of other instructions in the case covering the same ground, the defendant, we think, would have been entitled to a submission of this evidence to the jury under proper instruction. The plaintiffs' counsel con-

tend that the subject matter of the refused instruction had been already covered by correct instructions given in the case in other forms. Whether this was so or not, or whether under the circumstances of this case the court was justified upon that ground in refusing said instruction, we cannot say that there was error in the action of the court in so doing, because the instruction itself, as applied to this case, and in the form in which it was asked, we do not think was correct.

Instructions employing the language and qualifications which we deem objectionable in this are to be found, we are aware, in numerous decisions; but, we think, they have been approved in cases, for the most part, at least, substantially different from the case before us in the elements of time, circumstance and place, and in the character and capacity of the persons injured. In the case of *Frick v. Railroad Co.*, 75 Mo. 595, the qualifications contained in said instruction No. 8, were disapproved and held inapplicable to a class of cases to which we think this case belongs. In that case the child, Lulu, who was about two years old, had escaped from its parents and was shortly afterward run over by the cars on the railroad track between two streets in the city of St. Louis. A brakeman who was on the front car nearest the child testified that he saw the child upon the track when the car was about one or two lengths from the child, and that after the child was discovered it was impossible to stop the train in time to avoid the injury. There was a conflict of evidence, among other things, as to the length of time the child was in a dangerous position on the track. And an instruction containing, as we think, similar qualifications to the one before us was asked by the defendant in that case and was refused. In approving the action of the court in that behalf this court there said: "The second instruction asked by defendant was properly refused for the reason that it exempts the defendant from liability, unless the train could have been stopped in time to have prevented the accident after the dangerous situa-

tion of plaintiff was discovered. This instruction should have been qualified by adding after the word ' discovered' the words ' or by the exercise of ordinary care would have been discovered.' " In the same case the court further said, " we are of the opinion that if the servants of defendant saw, or, by the exercise of ordinary care, under the circumstances stated, could have seen the plaintiff in time to have avoided injury to her and failed to do so the defendant is liable."

So in this case, we think the instructions should have been qualified so as to come within the operation of the above rule, and thus embrace the question whether or not the driver, in the exercise of ordinary care, could have seen the child in time to prevent the accident. We do not think that we are authorized to assume in this case that the physical facts themselves which may be thought implied or involved in this instruction were such that the driver necessarily could not see the boy until it was too late to prevent the car from running over him. It follows from these views that the action of the court in refusing said instruction was not error, and the judgment of the trial court must, therefore, be affirmed. All concur, except SHERWOOD, J., who is absent.