LEVIN *et al.* v. METROPOLITAN STREET RAILWAY
COMPANY, *Appellant.*

Division Two, July 6, 1897.

1. **Change of Venue:** AFFIDAVIT BY ONLY ONE OF TWO PLAINTIFFS:
DEFENDANT'S APPEARANCE. Plaintiffs brought suit in Jackson county
for damages for the killing of their child by the defendant's train,
and applied for a change of venue which was granted to Cass county,
the affidavit having been sworn to only by the husband. *Held,* that
the objection, made for the first time in the Cass circuit court, that
the affidavit was insufficient because sworn to by only one of the
plaintiffs, came too late. *Held,* also, that, as the circuit court of Jack-
son county had power to grant a change of venue, the order granting
the change to Cass county was not void; and when the defendant
appeared to the suit in the Cass circuit court, its jurisdiction was
complete.

2. **Negligence:** QUESTIONS FOR THE JURY. Where the facts in evi-
dence are such as may well cause reasonable and fair minds to differ
as to whether the mother exercised reasonable watchfulness over her
child, or the servants of the defendant in charge of the train exer-
cised due care to prevent its being killed, the issue should be sub-
mitted to the jury under proper instructions, and in this case the
court did not err in refusing an instruction which stated that "under
the pleadings and evidence it is the duty of the jury to return a ver-
dict for the defendant."

3. ———: AN INSTRUCTION HELD PROPER. An instruction as to the
duty and watchfulness and contributory negligence of the parent, in
a suit for the killing of a child, is considered and held proper under
the circumstances of this case.

4. ———: INSTRUCTION AS TO GRIPMAN'S DUTY ON A STREET CAR. An
instruction that directed the jury to find for plaintiff "if the gripman
saw, or by the exercise of ordinary care could have seen, the de-
ceased child on the track in time to have stopped the train with
safety to the car and passengers and avoided the accident," is *held*
proper, *and* is not open to the objection that it fails to state that the
gripman also owed a duty toward the safety of passengers and to
other persons on the street, such objection under the circumstances
of the case being without merit.

*Appeal from Cass Circuit Court.*—Hon. W. W. Wood,
Judge.

Affirmed.

*R. T. Railey* and *Pratt, Dana & Black* for appellant.

(1) The change of venue was improperly granted.
*Huthsing v. Maus*, 36 Mo. 101; *Lewin v. Dille*, 17 Mo.
64; *Jaffray v. Claflin Co.*, 119 Mo. 117; *State ex rel. v.
Bacon*, 107 Mo. 627; *State v. Taylor*, 132 Mo. 282;
Acts 1895, p. 93, sec. 2262. (2) The demurrer to
plaintiff's testimony should have been sustained.
*Mascheck v. Railroad*, 71 Mo. 276; *Boland v. Railroad*,
36 Mo. 484; *Johnson v. Railroad*, 28 Atl. Rep. 1001;
*Ogier v. Railroad*, 34 N. Y. S. 867; *Albert v. Railroad*,
39 N. Y. S. 430; Beach on Con. Neg., sec. 131; *Stillson v. Railroad*, 67 Mo. 671; *Senn v. Railroad*, 124 Mo.
629; Elliott on Railroads, sec. 1262; *Casey v. Smith*,
25 N. E. Rep. 734; *Watson v. Railroad*, 133 Mo. 246.
(3) The court erred in admitting testimony, over
defendant's objection, as to whether there were any
obstacles to prevent the gripman from seeing the child
as it approached the track. *People v. Worden*, 45 Pac.
Rep. 844. (4) The court committed error in allowing a witness to state over defendant's objection which
way he thought the gripman was looking at the time
of the accident. *State v. Miller*, 44 Mo. App. 159;
*Nelson Mfg. Co. v. Mitchell*, 38 Mo. App. 330; *Pugh v.
Ayres*, 47 Mo. App. 598; *Phares v. Barber*, 61 Ill. 275.
(5) Instruction 3 given on the part of plaintiff was
improper and error in this case, for it was not applicable to the facts and had no bearing upon the issues,
since the care that should have been exercised in no
way depended upon the circumstances of plaintiffs.
*Clark v. Fairley*, 30 Mo. App. 335; *Beck v. Dowell*, 40
Mo. App. 71. (6) Instructions 2 and 4 given for

plaintiffs were erroneous in that they directed a recovery for plaintiffs if the gripman saw or by the exercise of ordinary care could have seen the deceased in time to have stopped the train with safety to the car and passengers and avoided the accident.

*N. M. Givan* and *Hollis & Lithgow* for respondents.

(1)  The change of venue was wisely taken and properly granted. Defendant admitted the truth of the grounds in the application, and the affidavit was sufficient. Where the order transferred the whole case as to both plaintiffs, the jurisdiction over appellant was complete. *Holland v. Johnson*, 80 Mo. 36. (2) Defendant can not complain of error or irregularity in the Jackson circuit court, to which it failed to specifically except to the matters now complained of, and save same by bill of exceptions. *Clements v. Greenwell*, 40 Mo. App. 589; *State v. Taylor*, 132 Mo. 282; *State v. Knight*, 61 Mo. 373; *State v. Ware*, 69 Mo. 332. (3) The appellant says the court erred in admitting testimony as to whether there was any obstacle to prevent the gripman from seeing the child as it approached the track, and also in allowing witnesses to state "which way the gripman was looking at the time of the accident," especially the one who was not positive but was speaking from his best impression. These were facts bearing directly on the issues being tried, and if appellant has any authority supporting its position it has failed to cite it. The cases cited have no bearing on the question or on the case. (4) There was no error in giving instructions asked by respondents, nor in modifying the sixth instruction asked by appellant. *Barry v. Railroad*, 98 Mo. 62; *Werner v. Railroad*, 81 Mo. 374; *Kelly v. Railroad*, 70 Mo. 604;

*Donohue v. Railroad,* 91 Mo. 365; *Keim v. Railroad,* 90 Mo. 323; *Czezewzka v. Railroad,* 121 Mo. 201; *O'Flaherty v. Railroad,* 45 Mo. 70; *Frick v. Railroad,* 75 Mo. 595; *Welsh v. Railroad,* 81 Mo. 466; *Senn v. Railroad,* 108 Mo. 142; *Humbird v. Railroad,* 110 Mo. 76.

BURGESS, J.—This is an action for damages commenced in the circuit court of Jackson county, Missouri, against the Metropolitan Street Railway Company by plaintiffs for the death of their infant son, Garrison Levin, by being run over by one of defendant's cars, at or near Fifth and Central streets in Kansas City, Missouri. The accident happened on the fifteenth day of November, 1894.

At the January term, 1895, on application of plaintiffs a change of venue was granted to Cass county, where a trial was had on the twenty-fourth day of May, 1895, to the court and a jury, resulting in a verdict for plaintiffs in the sum of $5,000, from which defendant appeals. The ground alleged by plaintiffs for change of venue was that they could not have a fair and impartial trial in Jackson county, because defendant had an undue influence over the inhabitants of said county. The application was sworn to by only one of the plaintiffs, but no objection was made to it in the Jackson circuit court upon that ground. When the motion came on for hearing defendant offered testimony tending to show that plaintiffs' attorneys had known of the facts set up in the affidavit for change of venue long before the institution of the suit, which, upon motion of plaintiffs, was excluded. The application was sustained, and the venue changed to the circuit court of Cass county. After the cause had been sent to Cass county, defendant moved the court to transfer and move the cause back to the circuit court of Jackson county for the reason that the Cass circuit

court had no jurisdiction, and because of the insufficiency of the affidavit to the application. This motion was also overruled, and defendant excepted.

At the time of the accident plaintiffs were living at number 309, West Fifth street, Kansas City, which is some distance west of the junction of Fifth and Central streets. Fifth street runs east and west, and defendant has a double track street railway thereon propelled by cable cars run frequently in both directions, west on the north track and east on the south track. The width of this street from curb to curb at the point of the accident is about thirty-five feet. The distance between the two tracks is about four and one half feet. The distance from the curbing on the north side of the street to the north rail of the north track was between eight and nine feet. Number 309, West Fifth street, where plaintiffs lived with their infant son at the time of the accident, was on the south side of Fifth street, and about one hundred to one hundred and twenty-five feet west of Central street. Fifth street at the point of the accident is one of the most public thoroughfares in the city. The parents of deceased were poor people with two small children. The wife attended to her household duties, looked after a small second hand store, while her husband was engaged elsewhere. She had no help. The family apartments were in the back part of the store building on the ground floor. At the time of the accident Garrison Levin, deceased, was two years and ten months old. Just before the accident he and his brother, about six years old, were sitting on the doorstep of the home of plaintiffs upon or near which their mother was standing. The husband and father was not at home. While the children and Mrs. Levin were thus situated a Mr. Rettenberg came along and he and Mrs. Levin engaged in a conversation in regard

to the renewal of her license which had then expired. The child in the meantime, which had not exceeded five minutes, left its mother without being observed by her and went across the street, and was next seen by some of the witnesses to leave the sidewalk and start back toward his home. The child had not been away from its mother for more than five minutes at the time of the accident. She was not at the time engaged in any kind of work, but was talking to Rettenberg about her license. She was familiar with the car tracks in front of her door and knew the danger of her child getting hurt thereon. She could have seen the child going toward the track or the train approaching had she been looking. The distance at which the child went upon the track in front of the train was variously estimated by the witnesses at from five or six to fifty or sixty feet. When the gripman saw the child on the track the train was within four or five feet of it. The train was then going west on the north track. Some of the witnesses stated that there was a wagon on the north side of the street between the north track, where deceased was struck by the cars, and the curbing on the same side of the street, and that the child went from behind this wagon directly upon the track where it was struck. Other witnesses, however, testified to the contrary, and that there were no obstacles in the way to prevent the gripman on the car from seeing the child had he looked. The testimony showed that he did all he could to stop the train as soon as he discovered the perilous position of the child. There was evidence, however, tending to show that he was not looking in front of the cars, but was looking in a different direction, otherwise he would have discovered the child in time to have checked the cars, and averted the accident.

I. The first question presented by this record for consideration is the action of the circuit court of Jackson county in granting a change of the venue of the cause to the circuit court of Cass county on the application of plaintiffs. It is claimed by defendant that the change of venue was improperly granted, and that the Cass county circuit court acquired no jurisdiction of the cause. The objection to the application for the change was made in the circuit court of Jackson county before it was granted, and by motion in the circuit court of Cass county to remand the cause to the circuit court of Jackson county, because the venue had been improperly changed from the last named county. It is now insisted that the affidavit upon which the change of venue was granted is insufficient, in that it was not sworn to by both of the plaintiffs. It appears that it was sworn to by Selig Levin only. But no such objection was made in the circuit court of Jackson county, and it could not thereafter be made for the first time in the circuit court of Cass county. In passing upon a similar question in *Potter v. Adams' Ex'r*, 24 Mo. 159, it was said: "Without undertaking to say whether the objection ought to have prevailed, if it had been made at the proper time and place, it is sufficient to remark that it ought to have been made at the time the petition was acted upon, and in the court required to act, and not held back to be made in the court to which the cause was removed. Such a course of practice ought not to be allowed; it answers no purpose of justice, and there is no reason for permitting it." The same rule is announced in *State v. Knight*, 61 Mo. 373. The circuit court of Jackson county having the power to grant changes of venue in cases pending therein of its own motion, or upon application of parties litigant, the order changing the venue of the cause to the circuit court of Cass county was not void, and when defend-

ant appeared to this suit in that court its jurisdiction was complete.

II.   At the conclusion of plaintiff's evidence, and again at the conclusion of all the evidence, defendant asked the court to instruct the jury that "under the pleadings and evidence in this cause it is the duty of the jury to return a verdict for the defendant," which the court refused to do, and defendant duly excepted. It is insisted with much earnestness that this instruction should have been given, and that error was committed in its refusal.   Without again going over the facts connected with the accident in detail, we are unwilling to say either that plaintiffs were guilty of such negligence in permitting the child to escape from the immediate care of its mother and to remain therefrom unobserved for so short a space of time, say not exceeding five minutes before the accident, during which time she was engaged in conversation with another person about a business matter, her attention by reason thereof being diverted from the child, as to preclude their recovery; or that defendant's servants in charge of the train by the exercise of due care and watchfulness might not have discovered the perilous position of the child in time to have avoided the accident.   These were questions under the evidence upon which reasonable and fair minded persons might well differ and were properly submitted to the jury.   *Gratiot v. Railroad*, 116 Mo. 450; *Huhn v. Railroad*, 92 Mo. 440; *Nagel v. Railroad*, 75 Mo. 653; *Keim v. Railroad*, 90 Mo. 314; *O'Mellia v. Railroad*, 115 Mo. 205.

III.   There was no error committed in permitting witnesses on behalf of plaintiffs to testify over defendant's objection that there were no obstacles in the way to prevent the gripman from seeing the child as it approached the track.   Such testimony related to facts, rather than the mere expression of opinion.   It was

certainly proper for witnesses to state that there was no wagon on the street to obstruct the gripman's view, otherwise testimony to that effect upon the part of defendant could not be combated. This objection seems to be rather technical. This last observation applies to the fourth point insisted upon by defendant, that is, that the court committed error in allowing a witness to state, over defendant's objection, which way he thought the gripman was looking at the time of the accident. The judgment should not be reversed upon such grounds.

IV. It is also insisted that the court committed error in giving the third instruction upon the part of plaintiffs. It reads as follows: "The court instructs the jury that in determining whether the plaintiffs contributed by their negligence in the custody and care of their child, to its injury and death, you may consider whether or not they exercised that degree of care, caution and watchfulness over their child, in keeping him off the street and out of danger, which was reasonable and proper for parents in their circumstances of life, as shown by the evidence." It is urged against this instruction that it was not applicable to the facts of this case, and had no bearing upon the issues, since the care that should have been exercised by the mother in no way depended upon the circumstances of plaintiffs, and to so rule would be to make one rule of law for the rich and another for the poor in a case where the mother had actual charge of the child, and the accident happened right in her presence. This instruction is a literal copy of an instruction which was approved by this court in the case of *Czezewzka v. Railroad*, 121 Mo. 201. But it is contended that the facts in the two cases are so at variance that the rule announced in that case does not apply to this.

In that case while the mother was in the kitchen

preparing breakfast for her husband, who was away at the time, the child escaped from its bedroom where it had been sleeping with two other children, and went into the street and upon the tracks of the street car company where it was killed. In this case the plaintiffs had no nurse or servant, and while the husband and father was away from home, the mother was in charge of a small second hand store and of her two small children, and while talking with a gentleman with regard to the renewal of their license as merchants which had expired, the child. escaped, went into the. street upon the railway track and was killed. We think that there is no material difference between the facts in the two cases, and that there was no error in giving the instruction.

V. Plaintiffs' second and fourth instructions are criticised upon the ground, as claimed, that they directed a recovery for plaintiffs if the gripman saw, or by the exercise of ordinary care could have seen, the deceased in time to have stopped the train with safety to the car and passengers and avoided the accident. It is argued that the gripman's duty imposed by these instructions was not all of the gripman's duty in the premises; that he had to look out for the safety of those on the street, whether on foot or in vehicles, and of those about to become passengers, if any. It is somewhat difficult to see how the safety of persons on the street or about to become passengers on the cars could have been imperiled by stopping or slacking the speed of the train. And it may be that if the gripman had been on the watch for persons on the track, or about to become passengers, he would have discovered the child in time to have averted the accident. The criticism we think without merit.

VI. The sixth instruction as asked by defendant was properly refused, but as modified it presented the

law of the case as far as it undertook to do. so, very fairly to the jury. As asked it precluded the recovery by plaintiffs if the mother of the child was guilty of negligence in permitting the child to escape from her presence and go upon the railroad track, although defendant's gripman in charge of the movement of the train, either saw, or by the exercise of ordinary care might have seen, the child in time to have averted the injury. As asked it was not in accord with repeated rulings of this court. As modified it is. *Werner v. Railroad*, 81 Mo. 368; *Donohue v. Railroad*, 91 Mo. 357; *Frick v. Railroad*, 75 Mo. 595; *Welsh et al. v. Railroad*, 81 Mo. 466; *Czezewzka v. Railroad, supra.*

The instructions taken as a whole presented every phase of the case to the jury with apparent fairness to both parties. Finding no reversible error in the record the judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.